SO ORDERED.

SIGNED this 12 day of March, 2010.

_____
Randy D. Doub
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### NEW BERN DIVISION

IN RE:

                                     CHAPTER 11

TAAF, LLC,                           CASE NOS.  10-00171-8-RDD

FULCHER TIRE SALES & SERVICE, INC.,           10-00172-8-RDD

TODD FULCHER, LLC,                     10-00174-8-RDD

      DEBTORS

## ORDER FOR CONTINUED DETENTION OF TODD A. FULCHER, AS CORPORATE OFFICER AND/OR MANAGING MEMBER OF DEBTORS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2005 TO COMPEL ATTENDANCE FOR EXAMINATION

On February 19, 2010, the Court entered an Order for Apprehension of Personal Representative of Debtors to Compel Attendance for Examination Under Federal Rule of Bankruptcy Procedure 2005 (the "Apprehension Order").  Pursuant to the Apprehension Order, the United States Marshal was directed to apprehend and take custody of Todd A. Fulcher, the corporate officer and/or  managing member of the above-referenced debtors pursuant to FED. R. BANKR. P. 2005 and to transport him to the United States Bankruptcy Court for the Eastern District of North Carolina, located in Wilson, North Carolina to appear at a hearing to determine if the allegations made by John C. Bircher, Esquire, the Chapter 11 Trustee, (the "Chapter 11 Trustee") in support of his oral Motion for Apprehension made on February 17, 2010 were true.

**Corporate Proceedings**

1.  Todd A. Fulcher signed the voluntary chapter 11 petition for relief filed on January 10, 2010 as a member-manager[1] of TAAF, LLC, captioned as case no. 10-00171-8-RDD.[2]

2.  Todd A. Fulcher signed the voluntary chapter 11 petition for relief filed on January 11, 2010 as the president[3] of Fulcher Tire Sales & Service, Inc., captioned as case no. 10-00172-8-RDD.[4]

3.  Todd A. Fulcher signed the voluntary chapter 11 petition for relief filed on January 11, 2010 as the member-manager[5] of Todd Fulcher, LLC, captioned as case no. 10-00174-8-RDD.[6]

4.  On January 11, 2010, the Court entered an Order to Appear for Examination setting the 11 U.S.C. § 341 meeting of creditors for Wednesday, February 17, 2010 at 10:00 a.m. at the United

---

[1]  The pleadings filed by the debtor do not reflect any other members of the debtor.

[2]  Furthermore, the Statement of Financial Affairs fails to list any income from the operation of the business during the past two years. This statement is inconsistent with the testimony provided by Mr. Fulcher at the hearings before this Court on February 4, 2010. Purportedly, TAAF, Inc. owns, leases, manages, and collects rents in connection with a number of commercial and residential properties.

[3]  The Statement of Financial Affairs filed by the debtor fails to list any other officers or directors of the corporation.

[4]  The Statement of Financial Affairs fails to list any income from the operation of the business during the past two years.  Similar to the TAAF, LLC Statement of Financial Affairs, this statement is inconsistent with the testimony provided by Mr. Fulcher at the hearings before this Court on February 4, 2010.

[5]  The pleadings filed by the debtor do not reflect any other members of the debtor.

[6]  The Statement of Financial Affairs fails to list any income from the operation of the business during the past two years. Testimony was provided that this entity owned the real property leased to Fulcher Tire Sales & Service, Inc. Schedule B reflects that there is no outstanding accounts receivable due from Fulcher Tire Sales & Service, Inc., yet Schedule G provides there is a 20 year lease between the parties. The Statement of Financial Affairs appears to be inconsistent with the Schedules.

2

States Bankruptcy Court in Wilson, North Carolina for each of the three corporate Chapter 11 cases. The Orders for Examination were duly served on Robert Lewis, counsel for the corporate debtors, via email and served on Mr. Fulcher at 1011 Pollock Street, New Bern, North Carolina 28562, the address listed on each of the three voluntary petitions.

5.   On January 14, 2010, Sound Banking Company filed a Motion for Relief from the Automatic Stay in the TAAF, LLC proceeding.

6.   On January 20, 2010, Branch Banking and Trust Company ("BB&T") filed a Motion to Prohibit or Condition Use of Cash Collateral in the TAAF, LLC proceeding.   On that same day, BB&T filed its Emergency Motion to Appoint a Chapter 11 Trustee in each of the three Chapter 11 proceedings (the "Appointment Motions").

7.   On January 25, 2010, the Bankruptcy Administrator filed its response in support of the Appointment Motions.

8.   On January 25, 2010, TAAF, Inc.; Fulcher Tire Sales and Service, Inc.; and Todd Fulcher, LLC; filed their oppositions to the Appointment Motions.

9.   On January 29, 2010, TAAF, Inc. filed its opposition to the Motion to Prohibit or Condition Use of Cash Collateral and also filed its Emergency Motion to Use Cash Collateral (the "Cash Collateral Motion").

10.  On January 30, 2010, TAAF, Inc. filed its opposition to the Motion for Relief from the Automatic Stay filed by Sound Banking Company.

11.  On February 2, 2010, Sound Banking Company filed its objection to the Cash Collateral Motion.

12.  On February 2, 2010, BB&T filed its objection to the Cash Collateral Motion.

3

13.   On February 3, 2010, the Bankruptcy Administrator filed her objection to the Cash Collateral Motion.

14.   On February 4, 2010, the Court conducted a consolidated hearing on the Cash Collateral Motion and the Motion to Prohibit Use of Cash Collateral pending in the TAAF, Inc. proceeding; as well as, the Appointment Motions pending in the three chapter 11 cases.

15.   Todd A. Fulcher testified as the corporate representative for the chapter 11 debtors on February 4, 2010 in the consolidated hearings.

16.   At the conclusion of the hearing on February 4, 2010, the Court instructed the parties that the matters would be continued until February 5, 2010 at 9:30 a.m. at which time, Todd A. Fulcher would be recalled to the stand to provide additional testimony.

17.   Mr. Fulcher failed to appear at the continued hearings scheduled on February 5, 2010. Counsel for the debtors appeared at those hearings and informed the Court that he received a call from a female friend of Mr. Fulcher informing counsel that Mr. Fulcher was "sick."

18.   On February 5, 2010, the Court proceeded to hear the matters continued from February 4, 2010.  At the conclusion of the consolidated hearing, the Court appointed a chapter 11 trustee in each of the three chapter 11 cases and prohibited the use of cash collateral by TAAF, Inc. until February 17, 2010 to allow the newly appointed chapter 11 trustee to investigate the cases.

19.   The Court continued the Cash Collateral Motion and the Motion to Prohibit Use of Cash Collateral until February 17, 2010 in Greenville, North Carolina.

20.   As addressed above in paragraph 4, the Meetings of Creditors in the chapter 11 cases were duly scheduled on February 17, 2010 at10:00 a.m. in Wilson, North Carolina.

21.  Robert Lewis, counsel for the corporate debtors, appeared at the scheduled Meetings of Creditors.  The Chapter 11 Trustee reported that Todd A. Fulcher, as a representative of the debtors, failed to appear, despite being ordered to do so and despite having proper notice of said Meetings of Creditors.

22.  At the hearing on February 17, 2010 in Greenville, North Carolina, Mr. Lewis represented that Mr. Fulcher was advised and informed that his presence was required at the Meetings of Creditors.

23.  The Chapter 11 Trustee informed the Court that Todd A. Fulcher was not present at his residence or Fulcher Tire Sales & Service, Inc. at various times since February 5, 2010 when the Chapter 11 Trustee attempted to inspect the premises.

24.  At approximately 12:15 p.m. on February 17, 2010, an emergency oral motion to compel the attendance of Todd A. Fulcher, as a representative of the debtors, was heard in the United States District Court, Greenville, North Carolina.

25.  The Court instructed Mr. Lewis that if Todd A. Fulcher failed to appear before the Court on the scheduled matters being heard at 1:30 p.m. that same day, the Court, based on the representations of the Chapter 11 Trustee, would issue an order compelling Todd A. Fulcher's appearance, as a representative of the debtors, pursuant to FED. R. BANKR. P. 2005.

26.  The scheduled matters in the above referenced cases were called at approximately 1:30 p.m. on February 17, 2010 by the Court, and Mr. Fulcher failed to appear.

27.  At the conclusion of the hearing, the Court ruled from the bench that based upon his repeated failures to appear, the United States Marshal Service was to apprehend Mr. Fulcher and bring him before the Court pursuant to FED. R. BANKR. P. 2005.

28.  Subsequently, the Court docketed the Apprehension Order on February 19, 2010 and forwarded it to the United States Marshal for execution.

**Individual Proceeding**

29.  Todd A. Fulcher filed an individual petition for relief under Chapter 13 of the Bankruptcy Code on January 9, 2010, docketed as case no. 10-00169-8-RDD.

30.  The Meeting of Creditors was duly noticed for February 10, 2010 at 11:30 a.m.

31.  The Court had extended the deadline for the debtor to file his schedules and a chapter 13 plan based on the motions filed by Mr. Fulcher on two occasions. The deadline to file the schedules and chapter 13 plan was February 23, 2010.  Subsequently, due to the debtor's failure to comply with the February 23, 2010 deadline, the apprehension of Mr. Fulcher in connection with the Apprehension Order, and the appointment of a Chapter 7 Trustee, the Court entered an order, *sua sponte*, permitting Mr. Fulcher until April 1, 2010 to file his schedules.  Otherwise, the case faced an automatic dismissal pursuant to 11 U.S.C. § 521(I).

32.  On February 8, 2010, counsel for Mr. Fulcher filed a Motion to Continue the February 10, 2010 Meeting of Creditors on the basis that his tax returns were not complete and that due to a change in the companion business cases, more time was needed to update income information and for the preparation of the remaining schedules and statement of financial affairs. On February 9, 2010, Richard M. Stearns, the Chapter 13 Trustee, (the "Chapter 13 Trustee") filed an objection to the Motion to Continue and requested a hearing. Mr. Fulcher and his counsel failed to appear at the Meeting of Creditors scheduled for February 10, 2010.  The Court scheduled a hearing on the Motion to Continue for February 17, 2010 at 1:30 p.m. in Greenville, North Carolina.

6

33.  On February 11, 2010, BB&T filed an Ex Parte Motion to Reduce Response Time and a Motion to Convert Chapter 13 Case to Chapter 7.  The Court allowed the Motion to Reduce Response Time and a hearing on the Motion to Convert was set for February 17, 2010 at 1:30 p.m. in Greenville, North Carolina and noticed to counsel of record via email on February 11, 2010.  A follow-up notice was provided via email on February 16, 2010.  On February 16, 2010, Mr. Fulcher filed a Response in Opposition to the Motion to Convert.

34.  Jessie Corwin, counsel for Mr. Fulcher in his individual case, appeared before the Court on February 17, 2010 in Greenville, North Carolina.  Mr. Fulcher failed to appear.  Ms. Corwin stated that her client was aware of the hearings but that he had not contacted her.

35.  The Court proceeded to hear the Motion to Continue the Meeting of Creditors and the Motion to Convert the Chapter 13 Case.

36.  Ms. Corwin asserted that based upon her research, the Court regularly granted motions to continue meetings of creditors when the deadline to file the schedules, statement of financial affairs, and chapter 13 plan was extended until after the initially scheduled Section 341 meeting.  However, Ms. Corwin did not contact Mr. Stearns, the Chapter 13 Trustee, to determine his practice or seek his consent to her motion.  Mr. Stearns informed the Court that he regularly objected to requests to continue meetings of creditors as counsel and debtors will still appear and provide him with relevant information, even if schedules are not filed.

37. The Court held that the Meeting of Creditors scheduled for February 10, 2010 was duly noticed and had not been continued at the time Mr. Fulcher and his counsel failed to appear.  The Court questioned how the changes in the companion corporate cases could impact the pre-petition information that the debtor was required to provide in his schedules and how the lack of 2009 tax

7

returns[7] would prevent an individual debtor from timely completing his schedules and proposing a chapter 13 plan of reorganization.

38. Also pending before the Court on February 17, 2010 in Greenville, North Carolina, was the Motion to Convert filed by BB&T. BB&T asserted that Mr. Fulcher did not appear to be taking an active role in his individual or corporate cases. His repeated failures to appear evidenced his indifferent behavior. In addition, BB&T asked the Court to consider the testimony presented at the February 4, 2010 hearing in the corporate cases as well as the statements of the Chapter 11 Trustee before the Court on February 17, 2010, including that Mr. Fulcher's source of income is derived from business involvement with the corporate debtors.

39. Furthermore, the Chapter 11 Trustee has not sought to employ the debtor and he does not appear to have any sources of income that would allow him to maintain Chapter 13 plan payments. Ms. Corwin stated that Mr. Fulcher's family had agreed to lend him $2,000/month to allow him to make plan payments to the Chapter 13 trustee. However, neither Mr. Fulcher nor any member of his family appeared at the hearing to corroborate this arrangement.

40. Of grave concern to the Court was Mr. Fulcher's failure to appear at the Court hearing in Wilson, North Carolina on February 5, 2010; the Chapter 13 Meeting of Creditors on February 10, 2010; and the Chapter 11 Meetings of Creditors scheduled on February 17, 2010. Based upon the facts raised by BB&T in its pleadings and at the hearing; and the concerns raised by the Chapter 13 Trustee, the Court found cause to convert the individual case to a Chapter 7 case. By order of this Court, Walter Hinson was appointed Chapter 7 Trustee on February 18, 2010.

---

[7]Question 1 of the Statement of Financial Affairs asks that Mr. Fulcher provide his 2009 income. Otherwise, income tax information from 2009 is not necessary for the completion of his schedules.

**<u>Apprehension and Detainment of Mr. Fulcher</u>**

41.  On February 19, 2010, Deputy United States Marshal Daniel Tubman, accompanied by a deputy sheriff from the Craven County Sheriff's Department, apprehended Mr. Fulcher at approximately 5:30 p.m. and transported him to the Craven County jail.

42.  Several hours after Mr. Fulcher was delivered to the Craven County jail, the nurse on staff at the Craven County jail contacted Deputy United States Marshal Johnnie Dove regarding Mr. Fulcher's condition.  She informed Deputy Marshal Dove that Mr. Fulcher could no longer be kept at the jail based on statements that he had made while in custody.  She informed Deputy Marshal Dove that Mr. Fulcher was being transported to the emergency room at Craven County Medical Center.

43.  A twenty-four hour detail was set up at the hospital and after four days in the Intensive Care Unit, Mr. Fulcher was released into the custody of Deputy Marshals Dove and Tubman.

44.  The Deputy Marshals returned Mr. Fulcher to the Craven County jail pending hearing on the Apprehension Order.

45.  Initially, the Court scheduled a hearing on the Apprehension Order on February 22, 2010 at 10:00 a.m. However, because of Mr. Fulcher's medical condition, the hearing on the Apprehension Order was reset for February 26, 2010 at 1:00 p.m.

**<u>February 26, 2010 Hearing on Apprehension Order</u>**

On February 26, 2010, the Court conducted a hearing on the Apprehension Order as required by Fed. R. Bankr. P. 2005 to determine if the allegations of the moving party were true, and, if so, the court may order an examination of Mr. Fulcher.  Furthermore, the court has the authority to "fix

9

conditions for further examination and for the debtor's obedience to all orders made in reference thereto." FED. R. BANKR. P. 2005(a).

John Bircher, the Chapter 11 Trustee; C. Scott Kirk, attorney for the Bankruptcy Administrator; Brian Becker, attorney for the Cox Group of Greenville, Inc.; Walter Hinson, the Chapter 7 Trustee for Todd A. Fulcher, individual; Jessie Corwin, counsel for Todd A. Fulcher, individual; Robert Lewis, counsel for the three Chapter 11 cases; and Todd A. Fulcher appeared at the hearing on February 26, 2010 in Wilson, North Carolina.

The Oral Motion for Apprehension made by the Chapter 11 Trustee on February 17, 2010 alleged that the examination of Mr. Fulcher is necessary for the proper administration of the bankruptcy estate and that he had reasonable cause to believe that Mr. Fulcher may have left his residence or principal place of employment to avoid examination. FED. R. BANKR. P. 2005 (a)(1). Furthermore, the Chapter 11 Trustee alleged Mr. Fulcher, as corporate representative of the debtors, willfully disobeyed an order to attend for examination when duly served. FED. R. BANKR. P. 2005 (a)(3). Mr. Fulcher disputes that he is a flight risk and that he willfully disobeyed the orders of this Court.

In support of apprehension, the Chapter 11 Trustee asked the Court to rely on his statements made in connection with the hearing on February 17, 2010. At that hearing, the Chapter 11 Trustee stated that he or one of his representatives drove past Mr. Fulcher's residence and his place of employment on several occasions but saw no signs of Mr. Fulcher. Furthermore, the Chapter 11 Trustee stated that he has not had any contact with Mr. Fulcher or his attorney regarding the turnover

of any rents collected since the petition date or corporate records.[8]    The Chapter 11 Trustee

proffered to the Court that Mr. Fulcher failed to attend the hearing on February 5, 2010 and the

meetings of creditors duly noticed for February 17, 2010.  Mr. Fulcher also failed to appear at both

the hearings on the corporate cases on February 17, 2010 and in his individual case on that same

day.

Although the Chapter 11 Trustee did not file an affidavit, the Court waived the affidavit

requirement under FED. R. BANKR. P. 2005.  The Chapter 11 Trustee is an officer of this Court and

has a duty of candor and honesty to this tribunal as an attorney admitted to practice in this district.

A written affidavit by the Chapter 11 Trustee is not required as an oral motion by the Chapter 11

Trustee is as reliable, or more so, than an affidavit.[9]  Furthermore, the Chapter 11 Trustee offered

to testify at the February 26, 2010 hearing but counsel elected not to call him as an adverse witness.

 As such, the Court adopts the statements made by the Chapter 11 Trustee as truthful and accurate

and as part of the evidence in this matter.

Todd A. Fulcher testified to rebut the Chapter 11 Trustee's assertion that he is a flight risk

and that he willfully disobeyed orders of this Court.  Mr. Fulcher testified that he was, in fact, in his

home at the time the Deputy Marshal and Craven County Deputy Sheriff took him into custody

---

[8]At the hearing on February 17, 2010, the Court required counsel for the debtors to
provide all documents related to the operation of the business that were in his possession to be
turned over to the Chapter 11 Trustee. The Court required counsel for the debtors to provide all
documents related to the operation of the business that were in his possession to be turned over
to the Chapter 11 Trustee.   At the hearing on February 4, 2010, Mr. Fulcher testified that he had
collected cash for rents that morning and had the cash in his pocket; however, he was unsure
how much of the cash was attributable to the collected rent.

[9]The Advisory Notes for FED. R. BANKR. P. 2005 provide that an affidavit may be
substituted by an unsworn declaration.

under the Apprehension Order.  To rebut the Chapter 11 Trustee's statements that he was not at his place of business, he stated that the Chapter 11 Trustee told him not to go on the property.

Furthermore, Mr. Fulcher stated he did not willfully fail to appear at either the February 5, 2010 or February 17, 2010 hearings.  With respect to the February 5, 2010 hearing, he stated that he was sick.  When he woke up that morning, he alleges that he sent a text message to his attorney that he was sick.  Mr. Fulcher testified that he was unable to speak and that he drove himself to the doctor's office at 8:30 a.m.  He was diagnosed with an upper respiratory infection and was told by his physician to rest for a few days.  Mr. Fulcher stated that he received a note from his physician and that he believed he gave the note to his attorney.  Counsel did not attempt to introduce the doctor's note or an affidavit from the doctor.

With respect to the February 17, 2010 hearings, Mr. Fulcher stated that he slept that afternoon until 3:00 p.m. and did not wake up in time to attend the meetings of creditors or the 1:30 p.m. hearings in Greenville, North Carolina.

Mr. Fulcher testified that he is on medication for a bipolar condition and is prescribed Paxil as well as a second medication.  He was unsure of the name of the second medication.  Mr. Fulcher stated that he did set his alarm clock for the February 17, 2010 hearings and that he did not know why he failed to wake up that day until after 3:00 p.m.

There was no testimony that Mr. Fulcher tried to contact either his corporate counsel, Robert Lewis, or his individual counsel, Jessie Corwin, on February 17, 2010.  Both attorneys stated at the hearings on February 17, 2010 that he was aware that he needed to be present at the hearings.

Neither his individual counsel nor his corporate counsel filed a request for a continuance with respect to the hearings set for February 17, 2010.[10]

With respect to his hospitalization, Mr. Fulcher stated that he did not feel well once he was at the jail in Craven County.  He stated that he voluntarily went to the hospital and woke up in the Intensive Care Unit (the "ICU").  Mr. Fulcher was unaware of the course of treatment while he was in the hospital, and he did not know why he was unconscious or in the ICU.

Mr. Fulcher remembered being treated by Suman Lamsal, M.D. while in the hospital at Craven Regional Medical Center.  When asked by Mr. Hinson if he knew the reason he was hospitalized, he replied that he was sick but did not ask any questions regarding his health or remember any other specifics related to his treatment.  In response to Mr. Hinson's question as to whether or not Mr. Fulcher had a drug abuse problem, Mr. Fulcher stated that he did not.

In response to Mr. Fulcher's testimony, the Chapter 11 Trustee called Deputy United States Marshal Tubman to testify.  Deputy Marshal Tubman testified that on February 19, 2010, he and Deputy Marshal Dove were directed by United States Marshal Clyde Cook to apprehend Mr. Fulcher in connection with the Order entered by this Court.

Deputy Marshals Tubman ("Tubman") and Dove ("Dove") coordinated their apprehension efforts with the Craven County Sheriff's Department.  In order to maintain the element of surprise, the marshals separated and Tubman, along with a deputy sheriff from Craven County, went to Mr. Fulcher's residence while Dove and another deputy sheriff visited Mr. Fulcher's parents. Tubman

---

[10]Mr. Lewis made an oral Motion to Continue the hearing on February 5, 2010 which was denied by the Court. At that hearing, counsel stated he received a call from a female friend of Mr. Fulcher who stated that he was sick and going to the doctor at the recommendation of a neighbor, who is a physician.

stated he understood that Mr. Fulcher's parents were cooperative and answered the door when Dove and the Craven County officer knocked.

Mr. Fulcher failed to respond to repeated knocking on the door at his residence. Tubman stated that he knocked on the doors to Mr. Fulcher's residence for approximately five to six minutes without any response. Mr. Tubman stated that he noticed some sort of recording or surveillance camera hanging in the garage window and although he and the deputy sheriff approached the property in an unmarked Ford Explorer, their apparel clearly identified them as officers. Furthermore, while knocking, the officers repeatedly identified themselves to any persons inside the house and announced the purpose of their entry onto Mr. Fulcher's property.

While at the residence, a female, now identified as Kelly Cox, approached asking what the officers were doing at the residence. Ms. Cox questioned the officers regarding Mr. Fulcher's whereabouts as she claimed there was no one in the house. She denied the officers access to the premises.[11] During this time, Ms. Cox received a text message. Tubman testified that based on the text, he had reason to believe that Mr. Fulcher was in the residence.[12]

The officers located an open door that lead to the interior of the garage. Upon knocking on the door between the garage and the residence, there was no response. Thereafter, based upon their belief that Mr. Fulcher was, in fact, in the residence, Deputy Marshal Tubman, along with the deputy sheriff, forcefully gained entry. Upon entry into Mr. Fulcher's residence, the officers located Mr.

---

[11]Tubman stated that Ms. Cox provided the officers a code to the garage door but that the garage door would not open.

[12]Tubman testified that Ms. Cox received a text instructing Ms. Cox to tell them to go away. Counsel for the Debtor objected to the Court allowing this testimony based on its hearsay qualities. However, the Court overruled the objection as the Chapter 11 Trustee was not offering the statement for the truth of the matter asserted, but instead as to why Tubman believed Mr. Fulcher was in the residence.

Fulcher behind a couch in one of the back rooms of the residence. Tubman testified that he instructed Mr. Fulcher to get on the floor. Mr. Fulcher refused to do so and began advancing towards the officers. Upon Mr. Fulcher's failure to comply with the second request of the officers that Mr. Fulcher get down on the floor, Tubman and the deputy sheriff took Mr. Fulcher to the floor and apprehended him.

Once Mr. Fulcher was in custody, he was removed from the residence in order for the officers to conduct a pat-down search to ensure their safety during transport. During the pat down, Tubman found a small bottle marked oxycodon, miscellaneous pills wrapped in plastic wrap, and the hollow tube of a pen containing white residue. Furthermore, Tubman stated he found a cell phone and a large amount of cash. Tubman estimated that there was probably close to $1,000.00 in cash in Mr. Fulcher's pocket.

During the time frame between apprehension of Mr. Fulcher and the pat down, Mr. Fulcher's mother and brother arrived on the scene. Tubman testified that the cell phone and the money were turned over to them.[13] He stated that the oxycodon bottle, the pills, and the cylinder portion of the pen with the white residue were turned over to the deputy sheriff as a matter to be addressed by the Craven County Sheriff's Department. He does not know whether or not these items have been tested to determine the nature of the substances that were present.

Subsequently, Mr. Fulcher was taken to the detention center in Craven County pending his appearance before the undersigned. However, several hours later, Dove received a call from the nurse at the medical unit in Craven County. She informed Dove that Mr. Fulcher could no longer

---

[13]  Tubman stated that prior to giving the money to Mr. Fulcher's relatives, he placed approximately $50.00 in Mr. Fulcher's pocket so that Mr. Fulcher would have some money to purchase items at the canteen while in lockup.

stay in the detention center based on statements Mr. Fulcher made to her.  Soon thereafter, the Craven County deputies transported Mr. Fulcher to the emergency room.  Dove and Tubman arrived at the emergency room and set up an "around the clock" detail to watch Mr. Fulcher.  Once admitted, Mr. Fulcher was ultimately sedated and sent to the ICU.  Due that the amount of drugs that were in Mr. Fulcher's system, he needed to be sedated so that anecdotal medicine could be administered to rid his body of other substances. Deputy Marshals Dove and Tubman manned the "around the clock" detail until Mr. Fulcher was released on the afternoon of Wednesday, February 24, 2010.  At that time, the deputy marshals returned Mr. Fulcher to the Craven County jail and did not have contact with him until Friday, February 26, 2010 at the time they transported him to Wilson, North Carolina in connection with the Apprehension Order hearing.

When questioned about Mr. Fulcher's disposition during the apprehension, Tubman stated that based on his experience in arresting persons on narcotics, Mr. Fulcher was clearly "high" and under the influence of a  narcotic or drug.  Deputy Marshal Tubman testified that he and the deputy sheriff were clearly marked as officers, yet Mr. Fulcher was erratic and uncooperative. Tubman stated that in connection with the civil matters he handles, he rarely sees the level of resistence shown by Mr. Fulcher.  He believes that when Mr. Fulcher saw both he and the deputy sheriff arrive, Mr. Fulcher did not want to go with them, so Mr. Fulcher attempted to evade apprehension by first hiding from them and then resisting their efforts to detain him.

Tubman stated that upon Mr. Fulcher's release from the hospital on Wednesday, February 24, 2010, his demeanor was changed.  Mr. Fulcher was in a much more relaxed, calm state - similar to his behavior at the hearing on Friday, February 26, 2010.

**<u>Discussion</u>**

Sufficient cause exists and has been proven and corroborated to validate the Apprehension Order that ordered the apprehension and detention of Mr. Fulcher, as a representative of the corporate debtors.

Subsection (a)(3) of FED. R. BANKR. P. 2005 permits the apprehension and detention of a debtor[14] by the United States Marshal where the "debtor that has willfully disobeyed a subpoena or order to attend for examination, duly served."  Willfulness under the Bankruptcy Act has been defined as "intentional and voluntary." *Tinker v. Colwell*, 193 U.S. 473, 485 (1904); <u>see also</u> *Citizens Bank of Maryland v. Strumpf,* 37 F.3d 155, 159 (4th Cir. 1994), *overruled on other grounds*, 516 U.S. 16 (1995)(recognizing in the context of violating the automatic stay provisions, a "creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay").  In the context of a contempt action, willful has been defined to mean "deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any

---

[14] The Order to Appear for Examination docketed in each of the corporate cases on January 11, 2010 provides that "THE COURT HEREBY DESIGNATES AND ORDERS, pursuant to Rule 9001(5), Federal Rules of Bankruptcy Procedure**, Todd A. Fulcher**, to appear and submit to examination, on behalf of the debtor, at the 11 U.S.C. § 341(a) meeting of creditors..."  FED. R. BANKR. P. 9001(5)(A) states that "if the debtor is a corporation, 'debtor' includes, if designated by this court, any or all of its officers members of its board of directors or trustees or a similar controlling body, a controlling stockholder or member, or any person in control."  The Bankruptcy Court selects a representative to appear at the meeting of creditors. *In re Continuum Care Svcs., Inc., d/b/a The Family*, 375 B.R. 692, 695 (Bankr. S.D. Fl. 2007) (citations omitted).  Based on Mr. Fulcher's testimony that he is the owner of each of the three debtors, his signature on the voluntary petitions, and the lack of other officers or members listed on the Statements of Affairs, the Court finds that Mr. Fulcher is the proper debtor, pursuant to Federal Bankruptcy Rule 9001(5)(A), to appear on behalf of these entities and his appearance is essential to be conduct these Chapter 11 cases  *In re Continuum Care*, 375 B.R. at 694.  Therefore, the Orders for Examination properly directed Mr. Fulcher, in his capacity as a representative of the debtors, to appear for the scheduled Section 341 meetings.

17

order." *C.H. Robinson Co. v. Medco, Inc.* (*In re: Appl. to Adjudge Brent Medlock in Criminal Contempt*), 406 F.3d 1066, 1072 (8th Cir. 2005)(citations omitted)(finding contempt where Medlock had knowledge of court orders and failed to comply with them).

Based on the testimony presented and the pleadings filed in this Court, Mr. Fulcher's failure to comply with this Court's orders was willful. Mr. Fulcher knew he was to appear to continue his testimony at the hearing on February 5, 2010 and intentionally did not appear. Mr. Fulcher stated that he texted his counsel early on the morning of February 5, 2010 about his illness[15] but then was able to drive himself to the doctor's office around 8:30 a.m. The doctor diagnosed Mr. Fulcher with an upper respiratory infection. This medical situation was not an emergency. Mr. Fulcher, acting on his own accord, chose to ignore the instructions of the Court regarding his continued testimony on February 5, 2010. Mr. Fulcher had the ability to drive himself to the doctor's office. Therefore, he also had the ability to drive himself to Court - either before or after seeing his physician.

There has been no evidence presented to the Court that Mr. Fulcher attempted to contact his counsel after seeing the doctor to determine if the Court would permit him to continue his testimony later in the afternoon. Furthermore, although there was testimony that Mr. Fulcher obtained a doctor's note documenting his visit, said note has not been presented to the Court. The Court does not dispute that Mr. Fulcher was ill. However, given the common nature of his illness, it does not warrant complete disregard of the order and instructions of this Court. Mr. Fulcher willfully failed to appear before the Court at the hearing on February 5, 2010.

--------

[15]This statement by Mr. Fulcher conflicts with the information that Mr. Lewis provided the Court on February 5, 2010. Mr. Lewis informed the Court that he spoke to Kelly Cox, a female friend, who told Mr. Lewis that Mr. Fulcher was sick, could not speak, and was going to the doctor's office.

In addition, Mr. Fulcher failed to comply with the Orders to Appear for Examination in connection with the Meetings of Creditors scheduled in each of the corporate cases for February 17, 2010.  Corporate counsel indicated that he previously contacted Mr. Fulcher regarding his appearance at the Meetings of Creditors scheduled for February 17, 2010.  Furthermore, Ms. Corwin stated that she also informed Mr. Fulcher regarding the matters pending in the individual case on the same day.  At approximately 12:15 p.m. on February 17, 2010, the Court instructed counsel that Mr. Fulcher's presence was required before the Court not later than 1:30 p.m. as the hearings in the individual case were set at that time.  However, Mr. Fulcher failed to appear at 1:30 p.m. and both corporate and individual counsel stated that they were unable to reach him.

At the hearing on February 26, 2010, Mr. Fulcher testified that he overslept and did not wake up until 3:00 p.m. on February 17, 2010.  When questioned as to whether or not he had any medical conditions that would result in his sleeping until 3:00 p.m., he did not know of any.

The Court finds that Mr. Fulcher's failure to appear on February 17, 2010 was willful.  He was made aware of the scheduled hearings and is represented by counsel both in his individual case and his corporate cases.  Instead of taking the proper measures to ensure his appearance at the hearings, he failed to accept the responsibilities associated with the filing of a bankruptcy case.  Mr. Fulcher stated he was aware of his obligation to be present at the hearings.  Through his own irresponsible and willful behavior, he failed to appear.

In addition, Deputy Marshal Tubman testified that Mr. Fulcher ignored the officers upon their entry onto his property and attempted to avoid apprehension.  There was testimony that the officers knocked on multiple doors of the residence and identified themselves for approximately five to six minutes.  Mr. Fulcher failed to answer the door and failed to comply with the orders given by

the deputy marshal and deputy sheriff.  His refusal to answer the door and comply with the instructions of the officers corroborates this Court's finding of willfulness to not comply with orders of the Court.

Lastly, pursuant to Section 521(a)(3) of the Bankruptcy Code, Mr. Fulcher has a duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties." Furthermore, subsection (a)(4) requires Mr. Fulcher to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, related to property of the estate..." The Chapter 11 Trustee stated that he had received very little cooperation from Mr. Fulcher or his counsel.  Mr. Fulcher testified that he had knowledge of the appointment of the Chapter 11 Trustee and his duty to cooperate.  When questioned by his attorney, Mr. Fulcher stated that his counsel advised him that counsel should correspond with the Chapter 11 Trustee, not him personally.  Between February 5, 2010 and February 17, 2010, Mr. Fulcher had no direct communications with the Chapter 11 Trustee but did turn over some keys to his attorney that were delivered to the Chapter 11 Trustee.  As of the hearing on February 26, 2010, Mr. Fulcher had failed to provide the rental income that he collected on February 4, 2010 to the Chapter 11 Trustee and any monies he may have collected since the filing of the petitions.

At the hearing in Greenville, North Carolina on February 17, 2010, the Chapter 11 Trustee stated that he had requested documents from counsel for the corporate debtors but had not received the files.  Based on that representation, the Court required counsel for the corporate debtors to turn over to the Chapter 11 Trustee any non-privileged documents in his possession related to the businesses.  The Court should not need to require turnover of basic corporate documents.  Such turnover is part of the duties of a debtor upon the appointment of a trustee.

20

Roy Glenn Fulcher, Jr., brother of Todd A. Fulcher testified that he was willing to take responsibility for making Todd A. Fulcher available for future scheduled examinations.  However, upon inquiry by the Court, no bond could be posted.  The Court determined the only satisfactory manner to insure attendance at future examinations or other matters scheduled in these proceedings by Mr. Fulcher was his continued detention by the United States Marshal.

Based on the foregoing, the Court finds that the Chapter 11 Trustee has satisfied his burden and Mr. Fulcher willfully disregarded the orders to appear for examination in these cases in this Court.  As such, apprehension and detention under FED. R. BANKR. P. 2005 is appropriate.

FED. R. BANKR. P. 2005(c) requires that conditions of release be governed by the policies and provisions of 18 U.S.C. § 3146(a) and (b).  Section 3146 provides that failing to appear is an offense in and of itself and that the penalty for doing so may not exceed one year.

## Recalcitrant Witness

Mr. Fulcher also appears to be a recalcitrant witness under 28 U.S.C. § 1826 based on his failure to comply with orders and instructions of this Court. *In re Younger,* 986 F.2d 1376, 1378 (11th Cir. 1993)(finding that confinement in a bankruptcy case is permitted but limited to the length of the bankruptcy case or eighteen months, whichever is less); *In re Continuum Care*, 375 B.R. at 695 (recognizing the applicability of the recalcitrant witness statute in a bankruptcy proceeding).

Section 1826(a) of Title 28 of the United States Code provides in pertinent part:

> Whenever a witness in *any* proceeding before or ancillary to
> *any* court or grand jury of the United States refuses without
> just cause shown to comply with an order of the court to
> testify … the court … may summarily order his confinement
> at a suitable place until such time as the witness is willing to
> give such testimony ... No period of such confinement shall
> exceed the life of … (1) the court proceeding … (2) before

21

> which such refusal to comply with the court order occurred,
> but in no event shall such confinement exceed eighteen months.

By failing to appear, Mr. Fulcher refused to testify and this refusal is not exempted from Section 1826(a). The statute is clear that it applies to any proceeding in a court of the United States. *In re Younger*, 986 F.2d at 1378. Therefore, as a recalcitrant witness, Mr. Fulcher could be detained for a period of up to eighteen months from the date of his confinement or the duration his bankruptcy proceedings, whichever is less.

Based on the confinement allowed both under FED. R. BANKR. P. 2005 and 28 U.S.C. § 1826, and to ensure Mr. Fulcher's appearance at the presently scheduled 2004 examinations in the corporate and individual cases, the March 22, 2010 rescheduled Meetings of Creditors in the corporate cases, and the April 1, 2010 Meeting of Creditors in the individual case, Mr. Fulcher shall remain in the custody of the United States Marshal until such time as the Meeting of Creditors in his individual case is concluded. The United States Marshal shall arrange for confinement of Mr. Fulcher and shall transport him to and from any hearings or examinations scheduled in these proceedings or the individual proceeding through, and including April 1, 2010.

Upon completion of the Meeting of Creditors in his individual case, Mr. Fulcher shall immediately be released from custody.

**SO ORDERED**.

**END OF DOCUMENT**